## Transylvania University, Inc., v. Rees.

April 21, 1944.

Swinford & Sims and M. J. Hennessey for appellant.

Silas Jacobs for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On June 25, 1925, Wm. S. Rees, a citizen of and resident in Bracken County, Kentucky, executed and delivered to a representative of the appellant, Transylvania University, a writing which reads:

"For the purpose of promoting Christian Education, and in consideration of the gifts of others, the undersigned hereby agrees to pay to Transylvania University, Five Thousand 00/ Dollars ($5000.00) payable as follows:—30 days after my death to create and endow the Dr. W. S. & Elva Rees Memorial Fund. Should the said Elva Rees survive me, an annuity of 6% shall be paid her on the amount paid so long as she shall live."

The promisor, and maker, died testate a resident of the same county, in April, 1936. His wife qualified as executrix of his will and the appellant, Transylvania University, after the expiration of 30 days following his death, presented to her its proven claim for $5,000, the amount of the promise contained in the writing, and demanded payment thereof, which she refused. On May 27, 1939 (the widow still living) plaintiff, and appellant, filed this action against her as executrix of her husband's estate in the Bracken Circuit Court seeking to recover the promised amount contained in the writing executed by her husband. The petition alleged the above facts together with an express offer made known to her at the time that it (plaintiff) would pay to her as surviving widow of her husband the stipulated 6% on the amount throughout her life, a copy of the writing being filed as an exhibit with the petition. Defendant demurred thereto which the court at first overruled followed by the filing of an answer and a motion to set aside the order overruling the demurrer to the petition, which latter the court sustained, and upon reconsideration sustained the demurrer to the petition, whereupon defendant withdrew her answer and it is not copied in this record. After the court sustained the demurrer to the petition, plaintiff declined to plead further, followed by a judgment dismissing its petition, and from which it prosecutes this appeal. Since the filed, but later withdrawn, answer has not been made a part of the record we are not advised as to the defense therein contained, nor is it essential to the determination of the sole question presented, which is, the nature and character of the writing sued on, i.e. (1) Whether it is contractual and capable of enforcement against the estate of the promisor after his death? or (2) whether it is exclusively a testamentary document subject to revocation by the maker at anytime? If it falls within classification (1) then the court erred in sustaining the demurrer to the petition and the judgment should be reversed; but if it comes under classification (2) then the judgment was proper and should be affirmed. Our task then is to determine on which side of the line separating the two named transactions this one belongs.

Within comparatively modern times courts have wrestled on judicial rostrums in an effort to evolve, or to find sufficient contractual obligations in such charitable promises as to make them enforcible by the promisee

after the promisor's death, notwithstanding he stipulated that his promise was not to be performed until after his demise. A complete history covering such period of judicial labored transition may be found in annotations beginning on page 868, 38 A. L. R.; 57 A. L. R. annotations beginning on page 986; annotations beginning on page 1305, 95 A. L. R.; annotations beginning on page 589, 115 A. L. R., and the cases which the annotations follow.

The source as well as the condition of the law as now administered in the enforcement of promises for the benefit of charitable objects and purposes, as administered by charitable institutions, is completely covered in the citations we have made, and is in accord with acknowledged text writers in the treatment of the same question. Therefore, since this opinion, for manifest reasons, is not intended to be an all-coverage treatise of the subject and its various related questions, and since each case must be determined on its own facts, we have determined to confine the opinion to the exact facts of the instant case and not undertake to differentiate seemingly conflicting cases further than is essentially necessary to support the conclusion we have reached. The citations herein made unlock the library and direct the reader to the volumes and pages containing all of the modern law with reference to the involved question.

Prior to the efforts of courts to find supporting grounds for the enforcement of such promises (payable after death) it was generally considered that they were purely testamentary and imparted to the promisee no rights unless the construed testamentary was executed in the manner prescribed by law which, if strictly adhered to in this case the writing sued on could not be enforced, since it was not executed as is required by law for the execution of a valid will. If, however, under the modern law as pointed out in the authorities, supra, the writing sued on possesses sufficient contractual elements to become a binding obligation from the time it was delivered to the plaintiff (the promisee) then it has the right to enforce it after the promisor's death according to its terms, and the court erred in sustaining a demurrer to the petition.

Among the various considerations which the modern doctrine has evolved so as to enable the promisee to enforce performance of the promise against the estate of

the promisor in such cases is, the attachment of conditions to be performed by the promisee which he or it agrees to by the acceptance of the written promise containing the conditions. Such implied agreement arising from acceptance is thoroughly shown by the text in 17 C. J. S., Contracts, p. 376, subsec. g of Sec. 41, the section dealing with the subject of "Forms of Acceptance." The text in subsec. g says: "If an offer is made by delivering to another a paper containing the terms of a proposed contract, and the paper is accepted, the acceptor is bound by its terms, * * *." Sec. 141 on page 495 of the same volume (and which is referred to in the excerpt) says: "Where one accepts a paper which he knows contains the terms of an offer, he will be bound by it, and cannot be heard to say that he did not read it or did not know what it contained; but it has been held that this rule does not apply to an illiterate person unable to read who accepts a paper as containing the terms of a contract previously agreed on." Cases are cited in the notes to each excerpt we have taken from the text, and all courts including this one, appear to apply that rule universally, an illustration of which is, the acceptance of a deed by the grantee imposing conditions upon him, such as the assumption of an encumbrance placed upon the conveyed property by the grantor. Other instances might be cited. Therefore, when the instant plaintiff accepted the writing sued on containing the condition imposing upon it the obligation to pay to the promisor's widow 6% on the amount promised, it agreed to comply with that imposed condition and thereby obligated itself to do so, and the authorities, supra, unanimously hold that under the modern doctrine that implied promise by plaintiff, the promisee, was a sufficient consideration to entitle it to enforce the promise of Wm. S. Rees, though that promise on his part was not to be complied with until after his death.

Such conclusion does not conflict with our recent opinion in the case of Floyd v. Christian Church, etc., 296 Ky. 196, 176 S. W. (2d) 125, 131, since the writings in that case were found by us to impose, neither expressly nor by implication, any obligation on the promises in the writings sued on. But in that opinion we referred to various other former ones by this court, some of which may be found in the opinion and will not be relisted here, but which the reader may locate by reading that opinion, and in so doing ascertain the

250

ground upon which we base the opinion denying liability of the promisor. We concluded that opinion with this sentence: "So, in the final analysis, the determining factor in the decision in this case is our conclusion that the instruments sued on are not supported by valuable considerations." It was found in that case that none of the writings sued on contained, either an express or implied promise on the part of the promisee, and for which reason the writings sued on could not be enforced in the absence of a legally recognizable consideration flowing from the promisee. Neither could we sustain the action in that case under the modern evolved doctrine of "promissory estoppel" since it was not shown that the promisee in the writings there involved had taken any affirmative action on the faith of the promise of the one who executed those writings. It was not developed that any change of conditions was made because of the written promises therein involved and for which reason we concluded that there was no consideration supporting the written promises sued on, and which rendered them unenforcible.

It is our conclusion, therefore, that the court erred in sustaining the demurrer to the petition and in dismissing it. Wherefore, the judgment is reversed, with directions to set it aside and to overrule the demurrer to the petition and for proceedings not inconsistent with this opinion.

The whole Court sitting.